UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TYQUAN STEWART, <br><br> Plaintiff, <br><br> v. <br><br> MATTHEW LOUGHRAN, et al., <br><br> Defendants. | CAUSE NO.: 1:19-CV-247-HAB-SLC |

## OPINION AND ORDER

Tyquan Stewart, proceeding without counsel, seeks leave to proceed in forma pauperis [ECF No. 2]. He has filed a Complaint [ECF No. 1], naming Matthew Loughran, Brian Broderick, and Bloomberg BNA. According to the Complaint, Loughran, who is employed by Bloomberg, wrote an article that included a statement about Plaintiff that was false and misleading, and constitutes defamation of character and false light. Broderick is identified as the editor of the article.

For the reasons set forth below, Plaintiff's Motion is denied, and Plaintiff's Complaint is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

## DISCUSSION

Ordinarily, a plaintiff must pay a statutory filing fee to bring an action in federal court. 28 U.S.C. § 1914(a). However, the federal in forma pauperis (IFP) statute, 28 U.S.C. § 1915, provides indigent litigants an opportunity for meaningful access to the federal courts despite their inability to pay the costs and fees associated with that access. *See Neitzke v. Williams*, 490 U.S. 319 (1989). To authorize a litigant to proceed IFP, a court must

make two determinations: first, whether the litigant is unable to pay the costs of commencing the action, 28 U.S.C. § 1915(a)(1); and second, whether the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *Id.* § 1915(e)(2)(B).

Under the first inquiry, an indigent party may commence an action in federal court, without prepayment of costs and fees, upon submission of an affidavit asserting an inability "to pay such fees or give security therefor." *Id.* § 1915(a). Here, the Plaintiff's Motion establishes that he is unable to prepay the filing fee.

But the inquiry does not end there. District courts have the power under § 1915(e)(2)(B) to screen complaints even before service of the complaint on the defendants, and must dismiss the complaint if it fails to state a claim. *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999). Courts apply the same standard under § 1915(e)(2)(B) as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1018, 1027 (7th Cir. 2013).

To state a claim under the federal notice pleading standards, a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Factual allegations are accepted as true and must provide "sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, a plaintiff's allegations must show that his entitlement to relief is plausible, rather than merely speculative. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

**A.   Complaint Allegations**

Plaintiff alleges that in October 2017, his lawyer, David Frank, gave an interview to Loughran concerning litigation that Plaintiff was pursuing against a local hospital. Plaintiff had sued the hospital for violating the Emergency Medical Treatment and Labor Act (EMTALA). Loughran wrote an article for Bloomberg BNA titled "Psychiatric Hospital Can't Shake Emergency Treatment Claims." The article included Frank's statements:

> "This was someone who the hospital knew had a long history of mental illness," Frank said. "He had PTSD [post-traumatic stress disorder], he had literally almost been shot to death earlier, he had been treated at the hospital before and here he was, driving up to the door of the mental health hospital, notifying them that he was suicidal and that he planned on using his car to commit suicide, and they told him to go away and use his car to go to another hospital a mile away."

(Compl. 2.) Plaintiff alleges that this quote, attributed to his lawyer, "makes [him] look like a person who was almost shot to death earlier and now [he] was attempting suicide because of it." (*Id.* at 3.) It would thus cause a reader to "assume that [he] was scared from being shot earlier and [he] tried to kill [him]self because of it like [he's] some coward." (*Id.*)

Plaintiff alleges that "Loughran wrote, and or published these false and or misleading statement[s] in reckless disregard to the truth with intent to cause harm." (*Id.*) He asserts that the statement is offensive and humiliating and caused emotional distress. He is seeking damages of $1.5 million.

3

**B.      Defamation**

The law of defamation was created to protect individuals from reputational attacks. *Journal–Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 451 (Ind. 1999). Defamation is "that which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *Ratcliff v. Barnes*, 750 N.E.2d 433, 436 (Ind. Ct. App. 2001); *see also Baker v. Tremco Inc.*, 917 N.E.2d 650, 657 (Ind. 2009) (defining a defamatory communication as "one that tends to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person") (citing *Kelley v. Tanoos*, 865 N.E.2d 593 (Ind. 2007)). "The offensiveness of the statements cannot be determined by how the plaintiff views the statement[s]; the defamatory nature must be present in the nature of the words without any additional facts or circumstances to give context." *In re Ind. Newspapers Inc.*, 963 N.E.2d 534, 549–50 (Ind. Ct. App. 2012). To establish defamation, a plaintiff must prove the following elements: (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages. *Id.* Additionally, a defamatory communication is not actionable unless the communication is false. *Id.*

**C.      False Light**

Although false light claims may be based on defamatory statements, they reach different interests. *See Curry v. Whitaker*, 943 N.E.2d 354, 359 (Ind. Ct. App. 2011). The Restatement of Torts defines invasion of privacy by false light as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E (1977). A plaintiff cannot succeed on an invasion of privacy by false light claim if the alleged communication was accurate. *Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514, 525 (Ind. Ct. App. 2001).

### D. Failure to State a Claim

Plaintiff's Complaint does not plausibly suggest that the statements in the article were false, that they were defamatory or placed Plaintiff in a false light, or that they were made with the requisite state of mind.

To put the Complaint allegations in context, the Court notes that Plaintiff has not asserted that his lawyer did not make the statements that the article attributes to him. Nothing in the Complaint plausibly suggests that what Loughran wrote was anything other than what Frank said to Loughran during the interview.

Read as a whole, Plaintiff's Complaint does not suggest that any part of Frank's statement, as published in the article, was false. Without a false or inaccurate statement, there is no viable claim for defamation or false light. Plaintiff does dispute that he had a long history of mental illness, that he had PTSD, that he had almost been shot to death earlier, that he had been treated at the hospital before, that he notified hospital staff that

he was suicidal, and that the staff told him to drive to another facility. Rather, Plaintiff's complaint is that the statement could potentially mislead a reader into assuming that there was a connection between his suicidal thoughts and almost being shot to death, and the reader would further conclude that this was a cowardly reaction to the shooting.

To the extent any portion of the statement was false or misleading, the Court cannot find any basis to conclude that it was defamatory or could meet the requirements of a false light claim. None of the alleged facts suggest that Plaintiff's reputation in the community was lowered based on the statements contained in the article. That Plaintiff perceived the statement as humiliating is not sufficient. Additionally, the potential correlation between almost being killed by gunshot and a desire to commit suicide would not be "highly offensive to a reasonable person," such that Loughran would have known "that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity," *Curry*, 943 N.E.2d at 360 (quoting Restatement (Second) of Torts § 652E cmt. c.), particularly when considered in light of what Plaintiff had already made public through his lawsuit against the hospital. The basis of Plaintiff's litigation, about which Loughran was reporting, was that when Plaintiff drove to the hospital and asked for treatment because he was suffering from a psychotic episode and feared he would commit suicide, the hospital staff should not have told him to leave and drive to a nearby facility instead. (*See Stewart v. Parkview Hospital Inc.*, 1:16-cv-138 (Third Am. Compl., filed on Nov. 23, 2016).)

Finally, the Complaint does not contain sufficient factual matter to support a conclusion that Loughran and the other Defendants had reason to believe that Frank's

6

statements about the underlying circumstances of the EMTALA litigation were not accurate. *See New York Times v. Sullivan*, 376 U.S. 254, 279–80 (1964) (holding that actual malice, as an element of the tort of defamation, exists when the defendant publishes a defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not"). "Publications are made with 'reckless disregard' of the truth when the publisher has a high degree of awareness of their probable falsity." *Kitco, Inc. v. Corp. for Gen. Trade*, 706 N.E.2d 581, 588 (Ind. Ct. App. 1999) (noting that this subjective standard requires "sufficient evidence to permit the conclusion that the defendant . . . in fact entertained serious doubts as to the truth of his publication"). Plaintiff admits that Frank was his attorney in the litigation that was the subject of the interview and the article. Plaintiff has not alleged any facts from which it can be inferred that Defendants had serious doubts about the truth of Frank's statements concerning the events leading up to Plaintiff's interaction with the hospital staff.

Based on the foregoing, the Court concludes that the Complaint does not state a claim upon which relief may be granted. At most, the allegations reveal Plaintiff's preference that his attorney more carefully select his words during an interview with a journalist. The allegations, however, do not raise a right to relief above the speculative level for defamation or false light invasion of privacy against the journalist, the editor, or their employer. However, before dismissing a case under 28 U.S.C. § 1915(e)(2)(B)(ii), a court should give the litigant, especially a pro se litigant, an opportunity to amend his complaint, unless "it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir.

2015) (quoting *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (emphasis in *Tate*)). In this case, although it is unclear what repleading would accomplish—the Defendants' actions will presumably not change—the Court cannot say that it is certain from the face of the Complaint that an amendment would be futile.

## CONCLUSION

For the foregoing reasons, the Court:

(1) DENIES the Plaintiff's Motion for Leave to Proceed in Forma Pauperis [ECF No. 2];

(2) DISMISSES WITHOUT PREJUDICE the Complaint [ECF No. 1];

(3) GRANTS the Plaintiff until July 15, 2019, to file an amended complaint, accompanied by a new Petition to Proceed Without Prepayment of Fees and Costs *or* the filing fee; and

(4) CAUTIONS the Plaintiff that if he does not respond by the above deadline, this case will be dismissed without further notice.

SO ORDERED on June 13, 2019.

                                       s/ *Holly A. Brady*
                                       JUDGE HOLLY A. BRADY
                                       UNITED STATES DISTRICT COURT